IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Nos. 3:22-cr-0032 |
| ) | |
| LASHORN SAMUEL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ATTORNEYS:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**EVERARD E. POTTER, ASSISTANT UNITED STATES ATTORNEY**
OFFICE OF THE UNITED STATES ATTORNEY
ST. THOMAS, U.S. VIRGIN ISLANDS
  *FOR THE UNITED STATES OF AMERICA*

**CLIVE RIVERS, ESQ.**
LAW OFFICES OF CLIVE RIVERS
ST. THOMAS, U.S. VIRGIN ISLANDS
  *FOR DEFENDANT LASHORN SAMUEL*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge**

**BEFORE THE COURT** is Defendant's motion seeking to suppress evidence discovered by law enforcement as a result of a traffic stop. (ECF No. 23.) The Court held an evidentiary hearing on September 7, 2023. For the following reasons, the Court will grant the motion.

### I. FACTUAL BACKGROUND

The Court finds the following facts based on the evidence adduced at the evidentiary hearing.

#### A. Traffic Stop

On the night of October 19, 2022, Virgin Islands Police Department ("VIPD") Officer Nikita Turnbull ("Officer Turnbull") and Virgin Islands Department of Planning and Natural Resources Conservation Enforcement Officer Tabin Gumbs ("Officer Gumbs") were on patrol in their police unit in the Bolongo Bay area of St. Thomas when they observed a silver Toyota

*United States v. Samuel*
Case No. 3:22-cr-0032
Memorandum Opinion
Page **2** of **12**

Camry with a tinted cover on the rear license plate. Due to the fact that the officers could not see the numbers or words on the rear license plate and their knowledge that a license plate on a vehicle should not be covered, they effectuated a traffic stop of the vehicle.

Both Officers Gumbs and Turnbull testified that Officer Gumbs ordered the driver to exit the vehicle with his driver's license and vehicle registration documents and to walk backwards towards them. Officer Gumbs further testified that he called for backup because he could not see inside the Toyota Camry due to the windows being tinted. The driver of the vehicle, later identified as Lashorn Samuel ("Samuel"), complied with the officers' orders.

Within 2-5 minutes after the officers traffic stopped Samuel, approximately seven more officers arrived on the scene. One of the other officers who arrived on the scene was VIPD Officer Cindy Claudio ("Cindy Claudio") of the Special Operations Bureau ("SOB"). Officer Claudio testified that when she arrived, she observed Samuel kneeling approximately six feet behind his vehicle. At that time, she activated her body worn camera. **Defendant's Exhibit A.** The audio and video of the body worn camera depicted officers, with weapons drawn, ordering Samuel to kneel to the ground and to put his hands on top of his head. Officer Claudio then handcuffed Samuel while another officer, Officer Ecedro Lindquist ("Officer Lindquist") began to read Samuel his Miranda rights.[1]

### B. Search of Samuel's Vehicle

While officers were in the process of detaining Samuel and reading him his Miranda rights, other VIPD officers from the SOB began to open all the doors of Toyota Camry and commenced a search inside vehicle.[2] The video from the body worn camera shows the officers opening the doors and entering the interior of the vehicle. VIPD Officer Brad Francis ("Officer Francis") testified that when he arrived on the scene, he observed Officer Claudio patting down Samuel. He then went to the vehicle to determine whether there were any occupants inside. Officer Francis also testified that while standing near the front driver door, he smelled a scent of marijuana coming from the vehicle. Officer Francis further testified that

---

[1] The video shows that Samuel was holding what is commonly known as a Black and Mild cigarette in his hands while he was being handcuffed.

[2] Before the officers conducted the pat-down of Samuel and while he was handcuffed, the video from Officer Claudio's body-worn camera shows all four doors for the Toyota Camry open with multiple officers surrounding the vehicle.

after smelling what he believed was marijuana, he explained to Samuel that he smelled marijuana coming from his vehicle. During the search of the vehicle, the officers discovered a firearm under the driver's seat as well as a police scanner inside the center console.[3]

However, as indicated below, according to the video from the body worn camera, several officers searched the vehicle before Samuel was patted down. The video also does not show Officer Francis advising Samuel that he smelled a scent of marijuana coming from his vehicle.

### C. Search of Samuel's Person

After the officers searched the vehicle to determine whether there were any occupants inside, Officer Lindquist instructed Samuel to stand up. The officers then searched Samuel's pockets and discovered two firearm magazines and a bag containing marijuana in his front left pocket. Officer Lindquist testified that he ordered Samuel to exit the vehicle over his police unit's PA system. He then directed Samuel to kneel and to put his hands in the air. Officer Lindquist further testified that he gave Samuel these orders because it was dark, based on the area where they were located, and for officer safety. Officer Lindquist read Samuel his rights and began to answer Samuel's questions as to why the officers pulled him over explaining that he wasn't wearing his seatbelt.[4] Officer Lindquist then instructed Officer Claudio to search Samuel for officer safety. There was no evidence adduced at the evidentiary hearing that the officers believed Samuel to be armed or dangerous prior to patting him down. After conducting the pat-down, Officer Claudio discovered two firearm magazines and a bag of suspected marijuana in one of his front pockets. After Officer Claudio discovered the two firearm magazines and the bag of suspected marijuana in Samuel's pocket during the pat down, Officer Claudio transported Samuel to the police station. There is no evidence that any of the officers issued a traffic citation to Samuel for the tinted license plate cover.

On November 18, 2022, the Government filed an Information charging Samuel with the federal offense of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The Information also charges Samuel with Virgin Islands

---

[3] Samuel can be heard on the video stating that he had a police scanner because he is a tow truck driver.
[4] Officer Lindquist can be heard in the video asking Samuel "Is there a reason why you didn't have your seat belt on?"

offenses of unauthorized possession of a firearm in violation of 14 V.I.C. § 2253(a) and unlawful possession of ammunition in violation of 14 V.I.C. § 2256(a). On March 15, 2023, a Grand Jury issued an Indictment charging Samuel with these same offenses. Samuel seeks to suppress the items discovered as a result of the search of his person and his vehicle on October 19, 2022.

## II. LEGAL STANDARD

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrant shall issue, but upon probable cause." U.S. Const. amend. IV. Undoubtedly, a search or seizure without a warrant is presumed to be unreasonable. *United States v. Bey*, 911 F.3d 139, 145 (3d Cir. 2018). The Government can overcome the presumption of unreasonableness by showing that an exception to the warrant requirement applies. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

In this case, it is undisputed that the law enforcement officers seized Samuel without a warrant. It is also undisputed that the officers engaged in a warrantless search of Samuel's person and his vehicle. Thus, the Government bears the burden of showing that these Fourth Amendment intrusions were constitutional.

## III. DISCUSSION

As discussed above, there are three Fourth Amendment events that took place in this case: (1) the traffic stop of Samuel's vehicle; (2) the search of Samuel's person; and (3) the search of Samuel's car. Each of these events are analyzed below.

### A. *The Traffic Stop was Lawful*

First, Samuel argues that the Government has not demonstrated that the officers had a legal basis to stop his vehicle. The Government argues that the officers had reasonable suspicion to effectuate a traffic stop based on Samuel committing a traffic violation. The Court agrees with the Government.

It is well-settled that the Fourth Amendment permits officers to stop a vehicle if the officer has reasonable suspicion that a traffic violation has occurred. *See United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006) ("[T]he . . . reasonable suspicion standard

applies to routine traffic stops."); s*ee also United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018) ("Traffic stops are classified as a type of *Terry* stop, and may be initiated based on a reasonable suspicion that a traffic violation has occurred."). An officer has reasonable suspicion if there are "specific and articulable facts which, taken together with rational inferences form those facts, reasonably warrant the intrusion." *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003).

Here, the Court finds that the credible testimony of Officers Gumbs and Turnbull established a legal basis for the officers to stop Samuel's vehicle. Title 20, Section 334 of the Virgin Islands Code provides:

> No license plate, or any portion of license plate may be covered with any tinted material, nor may any other material be placed on or around a license plate which would conceal or obscure any information contained on the license plate, including the registration expiration sticker.

During the suppression hearing, both Officers Gumbs and Turnbull – the officers who initiated the traffic stop – testified that they observed a tinted cover over the rear license plate of Samuel's vehicle which obstructed their ability to see any letters or numbers on the license plate. These officers' testimony provides specific and articulable facts establishing reasonable suspicion to suspect a violation of 20 V.I.C. § 334. *See United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (opining that "the Supreme Court established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely a pretext for an investigation of some other crime."); *United States v. Moorefield,* 111 F.3d 10, 12 (3d Cir. 1997) ("It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations.") Accordingly, the Court finds that the officers articulated specific facts justifying the stop.

Samuel argues that the Court should find that the Government failed to meet its burden because its witnesses gave conflicting testimony regarding the basis for the stop. Indeed, Officer Lindquist testified that the officers stopped Samuel's vehicle because he was not wearing his seatbelt while Officers Turnbull and Gumbs testified that they stopped the vehicle due to a tinted rear license plate cover. Notwithstanding the fact that failing to wear a seatbelt while driving a vehicle is a traffic violation justifying officers stopping the vehicle, the Court does not find Officer Lindquist's testimony on this issue to be credible. First, Officer

Lindquist was not the officer who stopped Samuel's vehicle, nor was he present at the time of the stop. Thus, he has no first-hand knowledge as to why another officer stopped the vehicle. Second, there is no evidence that either Gumbs or Turnbull informed Officer Lindquist as to why they stopped Samuel's vehicle. Whether Lindquist was misinformed or simply speculating as to the basis of the stop, the Court credits the testimony of Officers Gumbs and Turnbull and concludes that the officers effectuated a traffic stop based on the rear license plate containing a tinted cover.

### B. The Officers Did Not Have Reasonable Suspicion to Search Samuel

Next, Samuel argues that the officers had no legal basis to conduct a Terry-frisk pat-down of his person. The Government contends that the officers were justified in patting down Samuel for officer safety. The Supreme Court held in *Terry* that:

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

*Terry v. Ohio*, 392 U.S. 1, 30-31 (1968). "The sole justification of the search [for weapons] is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29. An "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27; *see also United States v. Murray*, 821 F.3d 386, 393 (3d Cir. 2016). "Any evidence obtained pursuant to an investigatory *Terry* stop (also known as a *Terry* stop' or a stop and frisk') that does not meet this exception must be suppressed as 'fruit

of the poisonous tree.'" *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (citation omitted).

The Government contends that the officers conducted a *Terry* frisk of Samuel for officer safety. Undoubtedly, "[o]fficer safety during a traffic stop has been a longstanding and recognized concern" and the "officer safety interest stems from the mission of the stop itself." *United States v. Hunter*, 88 F.4th 221, 225 (3d Cir. 2023) (quoting *United States v. Clark*, 902 F.3d 404, 410 (3d Cir. 2018)). "To justify a patdown of the driver or a passenger during a traffic stop . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). Here, there is no evidence that the officers believed Samuel to be armed and dangerous. There is also no evidence that the officers observed any unusual conduct or suspicious activity on the part of Samuel. *See*, *e.g.*, *United States v. Murdock*, No. 21-2273, 2022 WL 2128562, at *1 (3d Cir. June 14, 2022) (finding that "'[q]uick and furtive movements,' along with other indicators of criminal activity, support a reasonable suspicion that a suspect is armed and dangerous"); *United States v. Frierson*, 611 F. App'x 82, 86 (3d Cir. 2015) (finding that the officers' safety concerns were "justified by Frierson's appearance—specifically, that he wore a loose long-sleeved shirt that extended below his waist"); *United States v. Edmonds*, 606 F. App'x 656, 660 (3d Cir. 2015) ("the officers had reasonable suspicion that Edmonds was armed and dangerous—Officer Flynn observed a bulge in the rear of the pants of a man who had just unsuccessfully fled from a routine traffic stop and struggled with the pursuing officers"); *United States v. Calloway*, 571 F. App'x 131, 137 (3d Cir. 2014) (finding that articulable facts, including that "Calloway repeatedly disobeyed an order to show his hands and officers observed him with his hands near his waist and then his hands partially in the air" and "Calloway was looking around in a way that indicated he might attempt to escape and the stop occurred in a high-crime area," warranted a pat-down search for weapons). The officers stopped Samuel due to his vehicle having a tinted cover over the rear license plate. The officers then, in high numbers and with weapons drawn, ordered Samuel to exit his vehicle with his driver's license and vehicle registration. The officers then ordered Samuel to his knees with his hands on top of his head, handcuffed

him and searched his pockets and his vehicle. Samuel complied with all of the instructions given to him. There is no indication that Samuel was acting suspicious, attempted to flee, or otherwise failing to adhere to commands. Accordingly, the Government has failed to satisfy its burden of showing that the officers had identified any specific and articulable facts warranting a pat-down search of Samuel's person. Thus, the Court will suppress the items discovered as a result of this search.[5]

Moreover, whether the officers stopped Samuel because the vehicle contained a tinted rear license plated cover or for not wearing seatbelt, there is no evidence in this case that the officers engaged in any investigation related to the purpose of the stop. An extension of a traffic stop that diverts from the basic purpose of the stop without reasonable suspicion renders the stop unreasonable and in violation of the Fourth Amendment. *See United States v. Hurtt*, 31 F.th 152, 162 (3d Cir. 2022) ("without reasonable suspicion, an inquiry resulting in an extension of the traffic stop is unlawful if not related to the mission [of the stop]."). Again, in this case, the officers stopped Samuel for committing a traffic violation, ordered him to produce identification and vehicle documentation, ordered him to kneel, handcuffed him, and then searched his pockets – all without any effort to investigate the purpose of the stop. Simply stated, the officers engaged in no activity related to the mission of the stop. Accordingly, the search and seizure of Samuel was off-mission in violation of the Fourth Amendment. This provides another basis to suppress the items discovered on Samuel's person.

### C. The Officers' Search of the Vehicle was Unlawful

Turning to the search of the vehicle, the automobile exception to the search warrant requirement provides that, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). "The police may search an

---

[5] Ordinarily, officers are justified in conducting a pat-down search of an individual when that individual is engaged in "suspicious behavior." The Third Circuit has identified the following actions as suggestive of suspicious behavior: (1) the presence of a suspect in a high crime area;(2) a suspect's presence on a street at a late hour; (3) a suspect's "nervous, evasive behavior," or flight from police; and (4) a suspect behaving in a way that conforms to an officer's specialized knowledge of criminal activity. *See United States v. Brown*, 448 F.3d 239, 251 (3d Cir. 2006). None of these suspicious behaviors were present in this case.

automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). In this case, the Government contends that the officers had probable cause to search the vehicle based on the smell of an odor of marijuana coming from the vehicle. The Court finds this argument unpersuasive.

Officer Francis testified that, while verifying if there was anyone else in Samuel's vehicle, there was a smell of marijuana coming from the vehicle, which gave him the reason to search the vehicle. However, the Court finds that the evidence in this case demonstrates that the officers began to open the doors and engaged in a search of the vehicle while Samuel was being detained and questioned by the other officers and before any purported smell of marijuana. When the search team first approached the vehicle, all the doors except the driver's door, were closed. The officer then opened all the remaining doors of the vehicle, looked inside, and entered the interior of the vehicle to determine whether there were any occupants present. The opening of the doors and entering the interior of the vehicle constitutes a Fourth Amendment search requiring an exception to the warrant requirement. *See United States v. Ngumezi,* 980 F.3d 1285, 1289 (9th Cir. 2020); *see also United States v. Hurtt*, 31 F.4th 152, 163 n. 85 (3d Cir. 2022). Thus, the Government needed to show that the officers had probable cause to enter and search the interior of the vehicle.

The Government argues that Officer Francis' testimony provided that probable cause. However, Officer Francis testified that he first approached the vehicle to determine whether there were any occupants inside after he observed Officer Claudio patting down Samuel. The video evidence and the testimony of Officer Claudio established that she patted down Samuel ***after*** the officers approached the vehicle and searched the interior. The video from the body worn camera shows the officers surrounding the vehicle and entering its interior. At that time, Samuel was handcuffed and on his knees. Officer Francis also testified that he explained to Samuel that he smelled a scent of marijuana coming from the vehicle. This is not depicted in the video from the body worn camera that captures all of the officers who engaged and interacted with Samuel. Thus, the Court concludes that the search of the vehicle occurred before Samuel was patted down and prior to any purported smell of marijuana. Accordingly,

the Court finds the Government's argument that the officers had probable cause to search the vehicle based on the smell of marijuana unpersuasive.

Even if the Court were to credit the testimony of Officer Francis – which it does not – that he commenced a search of the vehicle based on the smell of an odor of marijuana coming from the vehicle, the Government has failed to provide articulable and particularized evidence justifying the search. "It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). "[T]he officers are entitled to draw reasonable inferences from the[] facts in light of their knowledge . . . and their prior experience." *United States v. Ortiz*, 422 U.S. 891, 897 (1975). Courts give deference "to the officer's conclusions based on the officer's experience." *United States v. Brown*, 159 F.3d 147, 149 (3d Cir. 1998).

In *Ramos* the Third Circuit concluded "that the odor of marijuana was 'sufficiently particularized' where the officers 'smelled an identifiable marijuana odor' within three or four feet of defendants' car and, relying on their skill and experience, concluded that the odor was coming from the vehicle." *United States v. Jackson*, 682 F. App'x 86, 87 (3d Cir. 2017). Unlike in *Ramos*, the smell of marijuana about which Francis testified is not articulable and particularized. Francis did not identify his distance from the vehicle when he smelled marijuana. Additionally, other than testifying that he is a patrol officer with the VIPD and was on the SOB team on the date of the incident, Officer Francis did not provide any evidence of the nature and extent of his training, skills and experience, including whether he received any training and had any experience in identifying marijuana odors, including whether the odor smell was for of burnt, raw, cured, or some other form of marijuana. *See United States v. Johnson*, 445 F. App'x 311, 312 (11th Cir. 2011) (finding probable cause for a vehicle search where "Officer McLendon smelled raw marijuana when he removed Fenn. The raw marijuana smell was strongest in the back seat area. According to Officer McLendon, he had encountered marijuana 100 to 150 times during his time with the police department. Additionally, based on his training and experience, Officer McLendon testified he was familiar with the difference in odor between burnt and raw marijuana."); *United States v.*

*DeLeon*, 979 F.2d 761, 765 (9th Cir. 1992) (finding that "a warrant cannot be based on the claim of an untrained or inexperienced person to have smelled growing plants which have no commonly recognized odor" where "there was no finding that Brown was qualified to recognize the odor of growing marijuana, which doubtlessly differs from the odor of cured or burning marijuana," and "[t]he unrebutted expert testimony in the record is that detection of marijuana plant aroma requires 'a trained person'"); *United States v. Gordon*, No. CRIM. A. 04-483, 2004 WL 2905249, at *7 (E.D. Pa. Dec. 15, 2004) (finding "Officer Herncane's testimony that he smelled a 'moderate odor' of unburnt (raw) marijuana to be credible" because he "is trained in the detection of narcotics . . . , specifically in the detection of the smell of raw marijuana," "he testified that he is able to distinguish the odor of raw marijuana from burnt marijuana," and he "has been involved in 2–5 arrests where he has been able to detect the presence of raw marijuana without the assistance of his K–9 dog"); *but see United States v. Talley*, 692 F. App'x 219, 222 (6th Cir. 2017) ("Although more information about Detectives Bevis's and Bowers's investigatory experience and olfactory acuity would have bolstered their reports, the lack of such information does not defeat probable cause, especially given that the marijuana odor *plus* the trash-pull evidence and Talley's criminal history justified the search.") (emphasis in the original).

Although Francis appears to have concluded that the smell coming from Samuel's vehicle was marijuana, there is no evidence that he made that conclusion by drawing on his "own experience and specialized training." *Brown*, 448 F.3d at 246; *see United States v. Henley*, 941 F.3d 646, 653 (3d Cir. 2019) (finding that veteran parole agent's "experience supervising parolees convicted of drug crimes easily meets the bar for our evaluation of her assessment" of whether the smell was marijuana or a skunk infestation); *see also People of the Virgin Islands v. Cannergeiter*, 61 V.I. 114, 135 (Super. Ct. 2016) (opining that the government failed to satisfy its burden that law enforcement officers possessed a reasonable, articulable, and particularized suspicion to search the vehicle based on an odor of marijuana coming from that vehicle).[6] Apart from the alleged smell of marijuana coming from the

---

[6] The Court notes that while a bag of marijuana was found in Samuel's pocket, the officers did not find any marijuana in Samuel's vehicle. Moreover, in the video, Samuel can be seen holding what appears to be a "Black and Mild" cigarette in his hands while being handcuffed.

vehicle, no additional and particularized fact was articulated by Officer Francis that would provide probable cause to believe that the vehicle contained contraband. *See*, *e.g.*, *United States v. Rodriguez-Mercado*, 788 F. App'x 97, 100 (3d Cir. 2019) (finding probable cause where "the officers not only observed the passenger rolling an unlit blunt; they also were confronted with a potent smell of marijuana coming from the car"); *United States v. Registe*, 830 F. App'x 708, 710 (3d Cir. 2020) (finding that marijuana odor coupled with the officer's "observation of what appeared to be a marijuana cigarette" was sufficient to establish probable cause).[7] Accordingly, the Court will suppress the items discovered as a result of a search of the vehicle.

## IV. CONCLUSION

For the reasons stated above, the Court will grant the motion to suppress. An appropriate order follows.

**Date:** February 28, 2024                       /s/ *Robert A. Molloy*
                                                    **ROBERT A. MOLLOY**
                                                    **Chief Judge**

---

[7] The Government's argument that the bag of marijuana Officer Claudio found in Samuel's pocket when she frisked him supported the existence of probable cause to search the vehicle is unpersuasive because the video evidence demonstrates that the search of the vehicle occurred before Samuel was frisked and, as explained above, the frisk of Samuel was invalid. There is no evidence that, at the time Officer Francis conducted the search of the vehicle, a bag of marijuana was found on Samuel, and Officer Francis did not testify that, at the time he conducted the vehicle search, he was aware of any marijuana found on Samuel. *See United States v. Lackey*, No. 20-2977, 2022 WL 313807, at *2–3 (3d Cir. Feb. 2, 2022) (where Officers Bates and Rudy smelled the odor of marijuana emanating from the vehicle, Sgt. Meik and Officer Rudy both observed that Lackey and Simmons appeared nervous during the stop, and "Simmons was found with marijuana on his person following a lawful search incident to arrest," the court properly concluded based on all these factors that there was a fair probability the vehicle contained evidence of a drug crime); *United States v. Byrd*, 813 F. App'x 57, 61 (3d Cir. 2020) ("Even more so than the smell of marijuana, Byrd's admission that he might have a blunt in the car gave the officers an articulable and particularized basis to believe the vehicle contained dugs. Byrd's admission, coupled with the knowledge that Byrd was nervous, had a significant criminal history, and had used an alias, established a fair probability that illegal drugs would be found in the car and gave the officers probable cause to search for contraband."). Based on the totality of the circumstances in this case, the Court finds that no probable cause existed to search Samuel's vehicle.